UNITED STATES DISTRICT COURT
DISTRICT OF
MASSACHUSETTS

UNITED STATES OF AMERICA

V.

DAMIEN HESS

CRIM. NO. 13cr10275-PBS

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TRANSFER OF TRIAL

Venue refers to the geographic area in which a prosecution and trial must be held. The right to be tried where the offense is committed is rooted in both Article III and Sixth Amendment to the United States Constitution which mandate that a person be tried in the district in which the offense is committed. *Cook v. United States,* 138 U.S. 157, 11 S.Ct. 268, 34 L.Ed. 906 (1891); *United States v. Johnson,* 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944). The constitutional command of "the crime committed" formula is reflected in Fed.R.Crim.Proc. Rule. 18 which provide that except as otherwise provided by statute or rule, criminal prosecutions are to be had in the district in which the crime was committed. *See United States v. Stratton,* 649 F.2d 1066, 1076 (5th Cir. 1981).

Admittedly, an offense committed in more than one district may be "prosecuted in any district in which the offense begins, continues, or is completed." 18 U.S.C. § 3237(a). Crimes, which are continuing offenses for purposes of § 3237(a), and may be prosecuted in any district where acts in furtherance of the crime occurred. *United States v. Baskin,* 280 App. D.C. 366, 886 F.2d 383 (1989), cert. denied, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1989). A determination of whether § 3237 may be invoked to sustain venue rests on an analysis of the nature of the crime charged, or whether the particular offense is complete in one district or is a continuing offense. *United States v. Rodriquez,* 465 F.2d 5 (CA2 1972). While the statute applies to crimes that begin in one district and end in another, it does not apply to crimes that lack continuity of performance and consist of a single act occurring at one time and at one place, although preparations for its commission may take place elsewhere. *Reass v. United States,* 99 F.2d 752 (4thCir. 1938); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2°d Cir. 1989), cert. denied, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1990).

Regardless of whether the crime is considered to be continuing or noncontinuing in nature, venue is not proper in a district in which the only acts performed by the defendants were preparatory to, and not part of, the offense. *United States v. Beech-Nut Nutrition Corp. supra.*

Thus, in a criminal case, the question of venue is not merely a legal technicality but a significant matter of public policy, *United States v. Delgado,* 914 F.2d 1062 (8th Cir 1990), and although circumstantial evidence

UNITED  STATES DISTRICT  COURT
DISTRICT  O F
M A S S A C H U S E T T S

UNITED  STATES OF AMERICA

V.

DAMIEN HESS

CRIM. NO. 13cr10275-PBS

DEFENDANTS' MEMORANDUM  OF LAW IN SUPPORT
OF MOTION FOR TRANSFER OF TRIAL

Ven ue refers to the geographic area in which a prosecution and trial must be held.  The right to be tried where the offense is committed is rooted in both Article III and Sixth Amendment to the United States Constitution which mandate that a person be tried in the district in which the offense is committed. *Cook v. United States*, 138 U.S. 157, 11 S.Ct. 268, 34 L.Ed. 906 (1891); *United States v. Johnson*, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944).  The constitutional comma nd of "the crime committed" formula is reflected in Fed.R.Crim.Proc. Rule. 18 which provide that except as otherwise provided by statute or rule, criminal prosecutions a re to be had in the district in which t he crime was committed . *See United States v. Stratton*, 649 F.2d 1066, 1076 (5th Cir. 1981).

Admittedly, a n offense committed in more tha n one district may be "prosecu ted in a n y district in which the offense begins, contin ues, or is completed."  18 U.S.C. § 3237(a).  Crimes, which a re co ntinuing offenses for purposes of § 3237(a), and may be prosecuted in a n y district where acts in furthera nce of the crime occurred. *United States v. Baskin,* 280 App. D.C. 366, 886 F.2d 383 (1989), cert. denied, 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1989).  A determination of whether § 3237 may be invoked to sustain venue rests on an analysis of the nature of the crime ch arged, or whether the particular offense is complete in one district or is a con tin uing offense. *United States v. Rodriquez ,* 465 F.2d 5 (CA2 1972).  While the statu te applies to crimes that begin in one district and end in another, it does not apply to crimes that lack conti nuity of performa nce a nd consist of a single act occurring at one time a nd at one place, although preparations for its com mission may take place elsewhere. *Reass v. United States,* 99 F.2d 752 (4thCir. 1938); U nited States v. Beech-Nut Nutrition  Corp., 871 F.2d 1181 (2°d Cir. 1989), cert. denied, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1990).

Regardless of whether the crime is considered to be con tinuing or noncontinuing in nature , venue is not proper in a district in which the only acts performed by the defendants were preparatory to, a nd not part of, the offense. *United States v. Beech-Nut Nutrition Corp. supra.*

Thus, in a criminal case, the question of ven ue is not merely a legal technicality but a significa nt matter of pu blic policy, *United States v. Delgado,* 914 F.2d 1062 (8th Cir 1990), a nd although circumstantial evidence

alone may be sufficient for a finding that venue is proper, such evidence must be properly considered by the finder of fact. *United States v Winship,* 724 F.2d 1116 (CA5 1984). Whether the place where the offense is committed is outside the jurisdiction of any particular state has been held to present a question of fact for the jury's determination. United States v. *Jackalow,* 66 U.S. 484, 17 L.Ed. 225 *(1862);United States v. Eder,* 836 F.2d 1145 (8th Cir 1988).

A prosecution for conspiracy may be held in any district either in which the conspiracy agreement was entered into or in which there was any act, even one which may appear to be innocuous, done by any of the conspirators either to effectuate the object of the conspiracy or in furtherance of the conspiracy. *Hyde v.United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912) (any overt act); *United States v.Naranjo,* 14 F.3d 145 (2nd. Cir. 1994) (venue in district to which telephone calls were made by defendant's co-conspirator in furtherance of conspiracy was proper where there was no unfairness or hardship to defendant nor artificial creation of venue in that district by government), cert. denied, 128 L.Ed.2d 484 (1994).

Venue was not proper in the district of trial with respect to the substantive count charging possession with intent to distribute a controlled substance, where the defendants did not actually or constructively possess that controlled substance in the district of trial. *United States v. Davis,* 666 F.2d 195, 200-201 (CA5 1982) (reversal of convictions under 18 U.S.C. § 2 and 21 U.S.C. 841(a)(1)).

In a prosecution for illegal sale of narcotics, where evidence referred to several streets where transactions took place between defendant and government agents but none of streets was identified as being in the city of Chicago and, although Chicago was mentioned a number of times in the record, it was not mentioned in relation to the crime charged and there was no evidence to establish commission of crime in Northern District of Illinois, proof of venue was insufficient. U.S. v. Jones. 174 F.2d 746 (CA7 1949).

Courts held that one who aids or abets a crime, though he may be prosecuted as a principal, can be tried not only in the district in which the substantive offense was committed, but also in the district in which he performed accessorial acts. U.S. v. Gillette, 189 F.2d 449 (CA2 1951), cert. denied, 342 U.S. 827 (19_); U.S. v. Coppola, 486 F.2d 882 (CAIO 1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (197  J. But the fact that an accessory performed acts in a district does not make it a proper venue for prosecution of his principal. U.S. v. Sweig, 316 F.Supp. 1148, 1159-1162 (D.C. N.Y. 1970).

In *United States v. Carreon-Palacio,* 267 F.3d 381, 391, 393 (5th Cir. 2001), the Court upheld a conviction based upon a determination that:
"To prove venue, 'the prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense.' [United States v. Turner. 586 F.2d 395, 397 (5th Cir. 1978) (citing United States v. Luton, 486 F.2d 1021 (5th Cir. 1973): Cau lev v. United States, 355 F.2d 175 (5th Cir. 1966)).] Under 18 U.S.C. § 3237, aiding and abetting "may be tried in the district where the principal committed the substantive crimes." [Winship. 724 F.2d at 1125.] Accordingly, we must ask whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict, the government proved by a preponderance of the evidence that the substantive crimes were committed in the Western District of Texas. [See United States v. White, 611 F.2d 531, 535 (5th Cir. 1980) (stating: 'The question for this couli, then, is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the jury verdict . . . the Government proved by a preponderance of the evidence that the forgery occurred within the Middle District of Florida. ') (citations omitted).] The evidence clearly established that Santos and Carreon possessed marihuana in the Western District of Texas. Since Santos and Carreon were the principals involved in the crime charged, Lopez's prosecution in the Western District for aiding and abetting that crime was proper."
United States v. Archer, 486 F.2d 670 (2°d Cir. 1973).
Court of Appeals dismissed for lack of venue. Federal government agents launched an investigation into state corruption and, in order to obtain jurisdiction, manipulated those under investigation into making three out-of-state phone calls. Defendants were convicted under the Travel Act, 18 U.S.C.S. § 1952 and appealed,

contending that that there was insufficient proof of use or of agreement to use interstate or foreign telephone facilities to satisfy the requirements of the Act. The court found that the government's manipulation of those under investigation to make out-of-state phone calls, in order for the government to have jurisdiction over the investigation, was improper. Without government interference, two of the calls would not have been made. The third call was of a casual and incidental occurrence and was not within the purview of the statute.

## United States v. Naranjo, 14 F.3d 145, 147-48 (2nd Cir. 1994).

"We see no basis for imposing any more rigorous requirement concerning the content of the phone calls than that they do further the conspiracy. We do not understand United States v. Reed, 773 F.2d 477 (2d Cir. 1985), to imply any additional requirement. Though Reed refers to a 'substantial contacts rule' for determining venue, id. at 481, it is clear that the panel regarded the locale of the defendant's acts as a sufficient basis for establishing venue: 'the alleged criminal acts provide substantial contact with the district.' Id. Phone calls in furtherance of a conspiracy are criminal acts, and a defendant is liable for the acts of a co-conspirator in furtherance of the conspiracy. That "substantial contacts" can be satisfied by any phone calls in furtherance of a conspiracy, without meeting some higher threshold test of importance, is demonstrated by the fact that the author of Reed wrote the subsequent opinion in Friedman. In the pending case, there was no evidence that Naranjo herself ever entered the Southern District as part of the narcotics conspiracy. She resides in Queens and was arrested there. All meetings related to the conspiracy also occurred in Queens. However, the actions of Naranjo's co-conspirator, Free, adequately supported the finding of venue. Free made numerous telephone calls to an undercover agent's beeper in Manhattan. The agent returned these calls from Manhattan on many occasions, and Free knew that the agent was calling from Manhattan. Free once called the agent at a pay-phone in Manhattan. During these calls, which were either initiated by Free or made by the agent in response to Free's beeper messages, the agent and Free discussed the narcotics transaction they were contemplating. Naranjo contends alternatively that the Government artificially created venue in the Southern District. This argument also fails. The Government 'did not orchestrate the phone call in order to lay the groundwork for venue' in the Southern District. United States v. Lewis, 676 F.2d at 511 n.3. It was Free who sought out the agent in that District. Furthermore, the agent did not go to Manhattan in order to create venue there."

## United States v. Corona, 34 F.3d 876, 879-881 (9th Cir. 1994).

"Although Corona never set foot there, Nevada was a proper venue for the conspiracy charge (count one) because it was the site of the initial agreement and subsequent phone calls planning the drug transaction. Venue for a conspiracy charge 'is appropriate in any district where an overt act committed in the course of the conspiracy occurred. It is not necessary that [the defendant] himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did.' Mevers, 847 F.2d at 1411 (citations omitted). The question we must answer, however, is whether Nevada was the proper venue for the substantive crimes arising from the conspiracy - distribution of cocaine (counts two and three) and use of a firearm during drug trafficking (count four) - which occurred entirely in California. The government claims the Pinkerton principle - the principle that conspirators can be responsible for the substantive offenses of their coconspirators - is a sufficient basis for venue in Nevada. See Pinkerton v. United States, 328 U.S. 640, 647, 90 L. Ed. 1489, 66 S. Ct. 1180 (1946). This principle, however, does not appear to control the question before us. What the government is essentially arguing for is a rule of law allowing venue over a substantive crime committed in furtherance of a conspiracy in any district where venue is proper for the conspiracy charge. While such a rule might make some sense from a policy standpoint, it runs counter to the venue principles established by the Constitution, the Federal Rules of Criminal Procedure, and the federal courts. 'When a defendant is charged in more than one count, venue must be proper with respect to each count.' United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1188 (2nd Cir.), cert. denied, 493 U.S. 933 (1989). The court must conduct a separate venue analysis for the substantive crimes and the conspiracy, even if the substantive crimes are committed in

furtherance of the conspiracy. See United States v. Jordan, 846 F. Supp. 895, 898 (D. Nev. 1994). The question before us, therefore, is whether for venue purposes the substantive offenses of cocaine distribution and use of a firearm can be considered to have taken place in Nevada. We conclude they cannot. Crimes consisting of a single noncontinuing act are 'committed' in the district where the act is performed. Beech-Nut 871 F.2d a t 1188. Crimes that are not unitary but instead span space and time, however, may be considered continuing offenses under 18 U.S.C. § 3237(a). Id. Continuing offenses may be prosecuted 'in any district in which such offense was begun, continued, or completed.' 18 U.S.C. 3237(a). In order to determine for venue purposes where a crime occurred 'we examine the key verbs in the statute defining the criminal offense to find the scope of relevant conduct.' United States v. Georgacarakos, 988 F.2d 1289, 1293 (1st Cir. 1993) (internal quotations omitted). The key verb in the statute at issue in this case is 'distribute,' see id. Although some of the initial arrangements for the drug deal in this case took place in Nevada, 'actions which are merely preparatory or prior to the crime are not probative in determining venue. . . . Only actions by the defendant which constitute . . . distributing . . . are probative in determining venue.' Id. Because the distribution here took place entirely in California, venue was not proper in Nevada. The acts of preparation that occurred in Nevada are simply not relevant to this issue. The few courts that have addressed this question have reached the same conclusion. In United States v. Walden, 464 F.2d 1015 (4th Cir.), cert. denied, 409 U.S. 867 (1972), the defendants were charged both with conspiracy to rob a group of banks and with a number of substantive counts of bank robbery arising from the conspiracy. Many of the banks they were charged with robbing were not in South Carolina, where the trial took place. The Fourth Circuit concluded that while enough planning and preparation took place in South Carolina to establish venue for the conspiracy charge, South Carolina was not the proper venue for the substantive counts of robbing out-of-state banks. The court declined to accept the district court's reasoning that an offense begins, for venue purposes, where any act in furtherance of its execution is performed. This analysis, the court stated, 'overlooks the legal distinction between preparation for a crime and commission of the crime itself, and is contrary to the spirit and letter of the Constitution.' Id. at 1018. The court concluded, '[a] decision by the United States to prosecute for conspiracy is not without some advantage to the government. To add to the advantages already existing by engrafting a forum shopping option as to substantive offenses would, we think, go too far.' Id. at 1020 (citations omitted). In Beech-Nut, the defendants were charged with both conspiracy and the substantive offense of introducing adulterated apple juice into the stream of interstate commerce. They were tried in the Eastern District of New York, although their only connection with that district was that they placed orders for the adulterated juice by making phone calls and sending letters to brokers located there. Reversing the convictions on the substantive counts for improper venue, the Fourth Circuit stated, 'Though the orders for the adulterated concentrate were undoubtedly acts in furtherance of the conspiracy, they were not part of the substantive . . . offenses.' Beech Nut, 871F.2d at 1191. In United States v. Jordan, f846 F.Supp. at 898,] the District Court of Nevada dealt with the exact question Corona poses. The defendant was charged with both conspiracy to possess with intent to distribute methamphetamine and distribution of methamphetamine. The distribution took place entirely in California, yet the defendant was tried in Nevada. The government made the same argument in support of venue that it makes in Corona's case - that by deciding Nevada is not a proper venue, the court will undermine Pinkerton coconspirator liability. The district court stated:   The government misstates the case. The question is not whether venue exists, but where venue exists. Venue over the offenses charged in Counts two and three appears to exist in California. . . . There is no danger of the bogey-man the government claims to lurk around the corner. There is no danger that Defendant may escape any criminal liability for Counts two and three due to a complete lack of venue.'

Nothing in Pinkerton or any other case we found indicates that once a defendant is charged with a conspiracy offense, venue over independent substantive crimes committed in furtherance of the conspiracy will automatically exist in any district having venue over the conspiracy offense.

The primary case relied on by the government on this issue, United States v. Stitzer, 785 F.2d 1506 (11th Cir. 1986), is distinguishable because it deals with the venue implications of a different offense defined

with a different key verb: possession of a controlled substance with intent to distribute. The cocaine in question in Stitzer had been possessed with the requisite intent in the state in which the trial was held (Florida), and one of the out-of-state codefendants to whom it was delivered in Chicago was linked to its possession in Florida as an aider and abetter and a coconspirator. Over objection by the out-of-state defendant, the Eleventh Circuit held that venue was proper in Florida based on their view that the possession with intent to distribute to which the defendant was adequately linked had occurred in that state. Using the key verb test that we adopt in this opinion, we would agree with the result in Stitzer because the possession occurred in the state in which the case was tried. But here, the crime of distribution, as we have explained, did not occur in Nevada. Thus, we have no quarrel with the result in Stitzer, but do not believe it dictates the conclusion in this case. (Emphasis supplied)."
United States v. Stitzer, 785 F.2d 1506, 1519 (11th Cir. 1986).
"Since possession with intent to distribute is a continuing offense, venue is proper wherever the crime takes place, including the place of origin. United States v. Gray, 626 F.2d 494, 497-98 (5th Cir.1980); United States v. Cooper, 606 F.2d 96 (5th Cir.1979). On direct examination, witness Mirdjani testified that he and Baldwin travelled from Fort Lauderdale, Florida to Chicago with three kilograms of cocaine which they gave to appellant Perna at P&M Motors. Appellant argues that under cross-examination, Mirdjani testified that Baldwin bought the cocaine in Houston, and thus never possessed it in the Southern District of Florida. Even assuming that Mirdjani did give two conflicting versions as to the origin of the cocaine, the jury reasonably could believe that Baldwin took the cocaine from Fort Lauderdale to Chicago, as he had done on numerous other occasions.
Since we are obligated to make credibility choices in favor of the government, we hold that Mirdjani's testimony on direct examination that the cocaine which Perna is charged with possessing originated in Fort Lauderdale supports venue in the Southern District of Florida as to Perna."

United States v. Williams, 274 F.3d 1079, 1084-1085 (6th Cir. 2001).
"The government argues that under the substantial contacts test, venue is proper in a district which is the locus of the effect of the criminal conduct. Reed, 773 E.2d at 483-84. According to Carboni [the undercover agent], the drugs were headed for distribution in Michigan because the drugs could be sold for a higher price in Michigan. The effect of the crime would be felt in Michigan, the government argues, and therefore, venue was proper in Michigan, although not only in Michigan.
After carefully reviewing the opinions of the magistrate judge and the district court, and examining the record, we find no evidence that the offense or any overt act in furtherance of the Williams/Del Bosque conspiracy occurred in Michigan, or that any effect of the conspiracy occurred there. Since a government agent cannot be a conspirator, United States v. Pennell, 737 F.2d 521, 536 (6th Cir. 1984), the only conspirators were Williams and Del Bosque. The evidence, taken in the light most favorable to the prosecution, shows that these men conspired to sell marijuana; the evidence does not show that their agreement was to do so for the purpose of causing the drugs to be resold or distributed in Michigan. The evidence shows, at most, that Williams and Del Bosque agreed to a drug transaction that began, was consummated, and ended in Texas. It is true that they heard Carboni mention that he was going to sell the marijuana in Michigan because he could get more money for it, but Carboni, the undercover agent, was not a conspirator. Moreover, he knew that the marijuana would never be sold in Michigan because he was facilitating the drug raid that would end the conspiracy in Texas. We disagree with the district court's analysis regarding the substantial contacts test. Applying the test to the facts in this case, we conclude that venue is not proper in Michigan because: (1) the defendant's agreement was made in Texas; (2) all of the overt acts constituting the offense occurred in Texas; (3) the locus of the effect of the criminal conduct was exclusively in Texas, because, while Carboni mentioned Michigan as his final destination, the conspirators did not agree to that, and in truth, even Carboni did not intend to cause the drug to be sent to Michigan; and (4) Texas is the venue that is most suitable for fact finding, because the defendants live in Texas, their families, friends, and potential character witnesses live there and, as we have said, the offense and all of its

elements, occurred there. The government's argument that Michigan was a proper venue as well as Texas, is unpersuasive. Michigan was chosen as a venue **solely** for the convenience of the government; the case agent who was "sponsoring" Carboni was located in Michigan and the unrelated criminal offense for which Carboni was awaiting sentence was pending there. None of the overt acts in consummation of the conspiracy occurred in Michigan and the conspiracy had no effect in Michigan. Moreover, it was never intended to have any effect there. Carboni, acting for the government, knew when he was making his drug deals with Williams that the drugs would never reach Michigan and that the drugs would be seized and the defendant arrested in Texas. The government's argument notwithstanding, there is no evidence that the **conspirators** fixed the price of the marijuana based upon their determination that the drug could be re-sold for a higher price in Michigan. The conspiracy between Williams and Del Bosque was simply one to sell the marijuana in Texas to a buyer in Texas, who professed that it was **his** purpose (although it was not) to resell the drugs in Michigan. That agreement did not provide the conspirators, Williams and Del Bosque, "substantial contacts" to Michigan. We do not believe that a government informant may arbitrarily determine venue merely by stating, falsely, where he intends to take the drugs for (Emphasis in original)."

**United States v. Delgado, 914 F.2d 1062, 1063-66 (8th Cir. 1990).**

"A conspiracy began in 1985 whereby cocaine was sent from Miami to Minneapolis for distribution in Fargo, North Dakota and Moorhead, Minnesota. A 23-count indictment charged 13 defendants; all but 2 defendants, Delgado and another, pied guilty before trial.

In January 1989, [co-conspirator] Lleras, while in North Dakota, placed an order for cocaine with Soto, who again sent Larson to Miami to obtain the cocaine from the Miami connection. DEA agents followed Larson to the airport, where he purchased a one-way ticket to Miami. Lazo and Delgado met Larson at the Miami airport, where the same federal agents continued their surveillance. Delgado then drove Lazo and Larson to Delgado's girlfriend's trailer where the three men stayed for the night. The next day, Delgado drove Lazo and Larson to a cockfighting club where they met a source who placed a package in Delgado's trunk. Back at the trailer, [**4] the three men inspected and sampled the cocaine contained in the package. Lazo then retaped the package and placed it in his suitcase. Delgado then drove Lazo and Larson to the airport. As Lazo and Larson boarded the plane, a drug dog reacted positively to Larson's suitcase. Lazo and Larson were then arrested at the Minneapolis airport where 2 kilograms of cocaine were seized from Larson's suitcase.

In this case neither Delgado nor the two kilograms of cocaine ever reached the district of North Dakota. The government argues that the principal Lleras had constructive possession of the cocaine in North Dakota when he promised some of the anticipated February shipment to two of his Fargo distributors.

Constructive possession has been defined by this court as knowledge of presence plus control. United States v. Wajda, 810 F.2d 754, 761 (8th Cir.), cert. denied, 481 U.S. 1040, 95 L. Ed. 2d 821, 107 S. Ct. 1981 (1987). It is clear that the government's argument cannot be reconciled with our definition of constructive possession. At the time Lleras was in North Dakota, he could not have had knowledge of presence or control over cocaine which may have existed somewhere in the world and which he thought he could obtain at some time in the future. At t)le time Lleras left Fargo to travel to Minneapolis on February 10, 1989, there was still no constructive possession of any identifiable cocaine, because Lleras still did not have any knowledge of presence or control over it. If Lleras did, at some point gain constructive possession of the cocaine, it occurred after Lazo and Larson secured it on February 11, 1989. The evidence shows that Lleras was already in Minneapolis when this occurred. The government submits that Delgado aided and abetted the principal Lleras. For venue to be proper in North Dakota under this theory, the government must show that the principal Lleras had both possession and intent to deliver at a time when Lleras was in North Dakota. Since it was not shown that Lleras had either actual or constructive possession of the cocaine, this theory must fail. In United States v. Davis, 666 F.2d 195, 200 (5th Cir. 1982), the Fifth Circuit was faced with facts similar to the present case. In Davis, the court found that

venue was improper as to the charges of possession with intent to distribute methaqualone, while finding that venue was proper as to conspiracy charges. The court stated:

The government argues, without citing any cases, that although the drugs never physically entered the territorial limits of the Middle District of Georgia the offense began there because: (1) Cochran made arrangements with Mr. Davis to purchase the drugs while Cochran was in Georgia; (2) Cochran began the process of obtaining the drugs while traveling through the Middle District of Georgia; and (3) the parties intended that the drugs be returned to that district for ultimate distribution at the street level. To adopt this argument would undermine the guarantees of article III and the sixth amendment that defendants will be tried in the state and district where the crime itself was committed. The government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time Mercer and Cochran were in the Middle District of Georgia. . . . This burden was not met since neither the Davises nor Cochran actually or constructively possessed the methaqualone in question until Mercer and Cochran arrived in Florida.

Here, the government argues that the crime of possession with the intent to distribute is a continuing offense under 18 U.S.C. § 3237(a), and that such offense may be prosecuted in any district where the offense began, continued, or concluded. The Tenth Circuit was faced with a similar situation in United States v. Medina-Ramos, 834 F.2d 874 (10th Cir. 1987). In Medina-Ramos, the court reversed convictions for possession with intent to distribute cocaine on the basis of improper venue, finding that under the continuing offense statute, the 'possession must nonetheless continue in the district in which the Government seeks to prosecute.' Id. at 877 n.1. In the present case, application of the continuing offense statute does not authorize venue in North Dakota because Delgado was never in North Dakota, the cocaine never reached that district nor did any action constituting possession take place in North Dakota. Such acts may have occurred in Minnesota or Florida, but they did not occur in North Dakota.'

United States v. Davis, 666 F.2d 195, 198-201 (5th Cir. 1982).

"The Davises raise two challenges to venue in this appeal. First, they assert that the district court erred in denying their motion for judgment of acquittal on the conspiracy count and travel act count because the evidence presented by the government was insufficient to establish venue in the Middle District of Georgia. Second, they assert that the district court erred in denying their motion for judgment of acquittal on the possession count because the methaqualone was never in Georgia. Venue may properly be laid in one district with respect to one count of an indictment, but still be improper with respect to the other counts. See generally United States v. Polizzi, 500 F.2d 856, 899 (9th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S. Ct. 802, 42 L. Ed. 2d 820 (1975). In this case we conclude that venue was proper with respect to the conspiracy and travel act counts of the indictment, but not with respect to the possession count. ... Conspiracy, possession with intent to distribute methaqualone and traveling in interstate commerce to carry on an unlawful business enterprise involving possession with intent to distribute methaqualone are continuing offenses which under 18 U.S.C. § 3237 n6 may be tried in any district in which the crime took place. See, e.g., United States v. Cooper, 606 F.2d 96, 97 (5th Cir. 1979), cert. denied, 444 U.S. 1024, 100 S. Ct. 685, 62 L. Ed. 2d 657 (1980) (conspiracy); United States v. Guinn, 454 F.2d 29, 33 (5th Cir.), cert. denied, 407 U.S. 911, 92 S. Ct. 2437, 32 L. Ed. 2d 685 (1972) (travel act); United States v. Polizzi, 500 F.2d at 899 (travel act); United States v. Barnard, 490 F.2d 907, 911-12 (9th Cir. 1973), cert. denied, 416 U.S. 959, 94 S. Ct. 1976, 40 L. Ed. 2d 310 (1974) (possession).

...Mrs. Davis makes the additional argument that she was improperly tried in Georgia because the government did not prove that she joined the conspiracy before Cochran and Mercer arrived in Florida. We disagree. Since the prior actions of coconspirators in furtherance of the conspiracy are attributable to one who later joins in the conspiracy, the conversations between Cochran and Mr. Davis and Cochran's drive through the Middle District of Georgia on his way to obtain the contraband methaqualone are attributable to Mrs. Davis. United States v. Wilson, 500 F.2d 715 at 727 (5th Cir. 1974), cert. denied, 420 U.S. 977, 95 S. Ct. 1403, 43 L. Ed. 2d 658 (1975). The actions of Mrs. Davis' coconspirators therefore serve to establish proper venue with respect to her

within the Middle District of Georgia. See Downing v. United States, 348 F.2d 594, 598 (5th Cir.), cert. denied, 382 U.S. 901, 86 S. Ct. 235, 15 L. Ed. 2d 155 (1965). ...Although the Davises' contentions concerning improper venue on the conspiracy and travel act counts are meritless, the final venue challenge concerning the substantive possession count raises a serious question. The government argues, without citing any cases, that although the drugs never physically entered the territorial limits of the Middle District of Georgia the offense began there because: (1) Cochran made arrangements with Mr. Davis to purchase the drugs while Cochran was in Georgia; (2) Cochran began the process of obtaining the drugs while traveling through the Middle District of Georgia; and (3) the parties intended that the drugs be returned to that district for ultimate distribution at the street level. To adopt this argument would undermine the guarantees of article III and the sixth amendment that defendants will be tried in the state and district where the crime itself was committed. The government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time Mercer and Cochran were in the Middle District of Georgia. See United States v. Gomez-Tostado, 597 F.2d 170, 173 (9th Cir. 1979). This burden was not met since neither the Davises nor Cochran actually or constructively n7 possessed the methaqualone in question until Mercer and Cochran arrived in Florida. n8 We therefore reverse the Davises' convictions under 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). n7. 'Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed.' United States v. Salinas-Salinas, 555 F.2d 470, 473 (5th Cir. 1977); accord, Garza v. United States, 385 F.2d 899, 901(5th Cir. 1967)."

**United States v. Medina-Ramos, 834 F.2d 874, 875-878 (10ʰ Cir. 1987).**

"Defendants were traveling from Los Angeles, California, to Chicago, Illinois. While the train was still in California, train officials determined that defendants were illegal aliens. They were taken off the train in Needles, California, arrested by the Needles police, and then taken to Blythe, California, to be processed for possible deportation. The train thereafter traveled on into Arizona, where a train official found a suitcase in the rack above the seats in which defendants had been sitting. The official remembered Medina-Alvarez carrying the case onto the train. He gave the suitcase to another train agent when the train stopped in New Mexico so it could be placed on a west-bound train and returned to Medina-Alvarez. When the agent in New Mexico opened the case to look for some identification, he found a kilo of cocaine in a box inside a plastic shoe bag. Defendants had never been in New Mexico until they were brought there to face the charges underlying their convictions. They contend that the physical presence in New Mexico of the cocaine alone was not sufficient under the circumstances of this case to establish venue. The Government argues that venue in New Mexico was proper under the doctrine of constructive possession. The statute at issue here, 21 U.S.C. § 84:1(a)(l), does not contain a specific venue provision. When the statute does not specify venue, the place at which the crime was committed 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.' United States v. Anderson, 328 U.S. 699, 703, 90 L. Ed. 1529, 66 S. Ct. 1213 (1946); see also United States v. Mendel, 746 F.2d 155, 164 (2d Cir. 1984), cert. denied, 469 U.S. 1213, 84 L. Ed. 2d 331, 105 S. Ct. 1184 (1985); United States v. Billups, 692 F.2cl 320, 332 (4th Cir. 1982), cert. denied, 464 U.S. 820, 78 L. Ed. 2d 93, 104 S. Ct. 84 (1983); Jackson, 482 F.2d at 1178. In making this determination, courts usually examine the verbs employed in the statute to define the offense. See Mendel, 746 F.2d at 164; Billups, 692 F.2d at 332. Defendants were charged with violating that part of section 841(a)(l) which states that it is unlawful to knowingly possess with intent to distribute a controlled substance. The key verb is 'possess,' and the acts that define the crime are the acts by which a defendant possesses the drug. The location at which the acts constituting possession occur is therefore the location at which the crime is committed for purposes of venue. Although defendants never physically possessed the cocaine in New Mexico, the Government asserts that the crime nonetheless took place there under the doctrine of constructive possession. It contends that even though defendants were removed from the train in California, they could have demanded the return of the suitcase and its contents at any time while the train was en route to Chicago, the intended destination of the defendants and their baggage. 'Constructive possession is possession in law but not in fact. A person in constructive possession

of an item knowingly holds the power and ability to exercise dominion and control over it. . . . 'In essence, constructive possession is the ability to reduce an object to actual possession." United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982) (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). Knowingly holding the ability to control an object, and the acts by which that ability is manifested and implemented, are thus the means by which a crime is committed through constructive possession. The typical constructive possession case in the criminal law is where the defendant and the object are in the same jurisdiction, but defendant does not have the object in hand and indeed may try to disclaim ownership or possession. Because he has the power or means to reduce the object to actual possession, by reason of holding a baggage claim or other identification connecting him to the object, we do not permit a disclaimer, and we rule that he possesses the object. We have found no case in which the defendant was prosecuted in a state where the object was found but to which neither the defendant nor a confederate had ever traveled. In our view, the acts and ability giving rise to constructive possession can only take place where the possessor is physically present, because he must exercise some act of dominion or authorize an act of dominion before the object may be reduced to his actual possession. It follows that the locus of the constructive possession, and hence the locus of a crime committed by constructive possession, cannot be a place where the defendant has never been, personally or by a person whose acts are attributable to him. Assuming that defendants in this case constructively possessed the cocaine, they did so in California where they held the ability to control and where any acts establishing this ability to control would have had to occur. n1  n1 The Government contends that possession with intent to distribute is a continuing offense and therefore governed by the venue provision in 18 U.S.C. § 3237(a) (Supp. III 1985), which provides in relevant part as follows:
"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."
Even if we were to conclude that possession is a continuing offense within the ambit of the above statute, the possession must nonetheless continue in the district in which the Government seeks to prosecute. As set forth in the text, constructive possession in this case could not continue into New Mexico because the acts constituting constructive possession could not have been done there. The Government's cited cases are not to the contrary. In United States v. Williams, 503 F.2d 50 (6th Cir. 1974), the court concluded only that the defendant in Cleveland had constructive possession of a suitcase lost in Chicago until airline personnel there turned the case over to a customs agent upon discovering illegal drugs. Venue was not an issue in the case and, significantly, the defendant was tried in Cleveland, not in Chicago. Similarly in United States v. Blackston, 547 F. Supp. 1 200 (S.D. Ga. 1982), aff'd in part and vacated in part on other grounds sub nom. United States v. Brantley, 733 F.2d 1429 (11th Cir. 1984), cert. denied, 470 U.S. 1006, 84 L. Ed. 2d 383, 105 S. Ct. 1362 (1985), venue was determined by reference to the location of the defendants and not by reference to the location of the drug. The defendants argued that venue in Georgia was improper because the drugs were located in South Carolina and were never proved to have been in Georgia where the defendants were. Contrary to the Government's argument here, the court in Blackston specifically stated that the offense of possession 'may be tried in any district where the defendants were even temporarily located, as long as the Government proves, by a preponderance of the evidence, that the defendants had knowing possession of the narcotics and the intent to distribute them while there.' Id. 547 F.2d at 1206 (emphasis in original). We likewise find no support for the Government's position in United States v. Barnard, 490 F.2d 907 (9th Cir. 1973), cert. denied, 416 U.S. 959, 40 L. Ed. 2d 310, 94 S. Ct. 1976 (1974). In that case several defendants were charged with conspiracy to import, importation, and possession with intent to distribute arising from two plane trips to bring marijuana from Mexico into the Central District of California. The court upheld venue for the possession charge in the Southern District of California because the plane, loaded with marijuana, flew over the Southern District on its way to the Central District. However, at least one of the defendants was in the plane when it flew over the Southern District, and, in view of the facts of the case and the conspiracy alleged, any defendants who were not actually in the plane were aiding

and abetting those who were. One who has never been physically present in a district may nonetheless be prosecu ted there for possession if he aids and abets a principal who has either actually or constructivel y possessed a controlled substance in the jurisdiction. See, e.g., Bra n tley, 733 F.2d at 1434: Un ited States v. Bu ckh anon, 505 F.2d 1079. 1082-83 (8th Cir. 1974). Although defenda nts in the present case were charged with aiding and abetting, there is no evidence showing that they aided and abetted anyone who actually or constructively possessed the cocaine in New Mexico with the inten t to distribu te it. n2   n2 We are not concerned in this case with a charge of distribu ti ng or importing a con trolled su bsta nce. Because the acts by which the crime of distribution is committed may be differen t from the acts establishi ng posse ssion, ven ue for that crime does not rest on the same factors that establish ven ue for a possession prosecu tion. See, e.g., U nited States v. Bru n ty, 70 1F.2d 1375, 1380-82 (11th Cir.) (distribution may include acts other tha n possession if perpetra ted in furtherance of tra nsaction as a whole), cert. denied, 464 U .S. 848, 78 L. Ed. 2d 143, 104 S. Ct. 155 (1983). Ven ue for importation crimes is set by statu te as "an y district from, through, or i nto which such . . . imported object . . . moves." 18 U .S.C. § 3237(a); see, e.g., U nited Sta tes v. G ray, 626 F.2d 494, 497-98 (5th Cir.) (importation not complete u n til drug reaches final destination; ven ue proper in an y district along the way), cert. denied, 449 U .S. 1038, 101 S. Ct. 616. 66 L. Ed . 2d 500 (1980); Jackso n, 482 F.2d at 1178.

## United States v. Tingle, 183 F.3d 719, 726-28 (7[t]h Cir. 1999).
"When Congress has not specifical ly defined where a crime should be deemed to have occurred, the '"locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constitu ting it.'" Cabrales, 524 U .S. 1, 118 S. Ct. 1772 at 1776, 141 L. Ed . 2d 1(quoting Un ited State v. Anderson, 328 U .S. 699, 703. 90 L. Ed. 1529, 66 S. Ct. 1213 (1946)). To determ ine ven ue, we exam ine the key verbs in the statu te defining the criminal offense to find the scope of the relevant cond uct.' U n ited States v. Georgaca ra kos, 988 F.2d 1289, 1293 ( 1st Cir. 1993) (interna l q uotations om itted). 'Actions which are merely preparatory or prior to the crime,' however, 'are not probative in determ in ing ven ue.' Id . ...I n the presen t case, Tingle was charged wi th a violation of 21U.S.C. § 841(a)(1 ), which states: 'it shall be u nlawful for any person knowi ngly or intentionally--(1) to ma nufactu re, [or] distribute . . . a control led substance .' The ind ictment specifica l ly charged that the offense was committed: (1) on Ju ne 23, 1996, (2) by distribu tin g.:eocaine base to Oscar Rathers, (3) in the Eastern District of Wisconsin a nd the Northern District of Illinois. HN21 +The governmen t had the burden of establishing the elemen ts of ven ue by a prepondera nce of the evidence. Bra n don , 50 F.3d at 469. The evidence showed that Tingle indeed distribu ted cocaine base to Oscar Rathers on Ju ne 23, 1996 in the North ern District of Illinois. It is also apparent that Tingle distributed cocaine to Allen Judon (th rough Rathers) on Ju ne 23, 1996 in the Eastern District of Wisconsin. Bu t the problem is that there was no evidence that Tingle distribu ted cocaine on Ju ne 23, 1996 to Oscar Rathers in Wisconsi n (the ven ue of the trial). I nstead , the evidence clearly established that all of the acts necessary for Tingle's crime of distribu ting cocai ne to Rathers were committed in Illinois, and none were committed in Wisconsi n.
    ...Of course, if the ind ictment had alleged that Tingle had distribu ted cocaine base to Allen Judon (or others) in the Eastern District of Wisconsin, venue would have been proper there, regardless of the fact that Tingle never left Illinois. But this is a separate offense from the distribu tion to Rathers, and any attempt to allege these two offenses in one cou nt of the indictment would have resulted in a duplicity problem . ...As it is, the indictment did not allege this distribution to Judon or anyone other tha n Rathers. Because the governm ent failed to show that even part of the crime of distributing cocaine base to Oscar Rathers occurred in the Eastern District of Wisconsin, it was not a proper ven ue for her trial on this charge. Moreover, the fact that the governm ent alleged that Tingle aided and abetted the crime of distribution of cocaine base to Oscar Rathers can not save her conviction, for the cocaine base was distributed to Osca r Rathers only in Illinois, and any aiding and abetti ng done by Tingle was done in Illinois.

... The government's reliance on United States v. Pomranz is unavailing. 43 F.3d 156 (5th Cir. 1995). In Pomranz, the defendant was charged with conspiracy to distribute marijuana and unlawful use of a firearm during a drug trafficking offense. Id. at 157. Pomranz argued that his trial for both crimes in the Northern District of Texas was improper because he only used the firearm in Oklahoma. The Fifth Circuit affirmed his conviction. Id. at 158. It held that the drug trafficking offense was a predicate offense of the firearm charge, and because this predicate offense was committed in the Northern District of Texas, part of the firearm charge was committed in the Northern District of Texas. Id. at 162. Therefore, Texas was a proper venue for the trial on the firearm charge. Recently, the Supreme Court used similar reasoning in holding that venue was proper for a use of a firearm charge wherever the underlying offense of kidnaping continued, regardless of whether the firearm in question was also used in that venue. Rodriguez-Moreno, 119 S. Ct. at 1244. These cases are easily distinguishable from Tingle's. In Pomranz and Rodriguez-Moreno, the underlying offenses (conspiracy to distribute drugs and kidnaping) were essential elements of the firearm charge. But Tingle's conspiracy offense (which was committed in Wisconsin) was not an essential element of her distribution charge. Thus, even though she committed at least part of the conspiracy offense in Wisconsin, Tingle did not commit any part of the charged distribution offense in Wisconsin. Without her having committed at least some part of the distribution offense in Wisconsin (and it need only have been a small part), venue was not proper there. Because the Eastern District of Wisconsin was not a proper venue for Tingle's trial on this count, n5 her conviction of distribution of cocaine base must be reversed."

United States v. Bezmalinovic, 962 F. Supp. 435, 437-41 (S. D. N. Y. 1997).
"It is undisputed that Bezmalinovic did not commit any acts in furtherance of the scheme in the Southern District of New York. Bezmalinovic allegedly prepared the false application in the Eastern District of New York, submitted the application to MHT in the Eastern District of New York, received the proceeds in the form of checks drawn on an MHT mortgage closing account located in the Eastern District of New York and deposited those checks in his personal checking account in the Eastern District of New York. Shortly thereafter, Bezmalinovic allegedly transferred the money to the account of a company he owned, P.C. & J. Contracting Co., Inc. ("PC&J"). Both PC&J and PC&J's bank account were located in the Eastern District of New York. According to the government, venue is proper in the Southern District of New York because of three contacts between Bezmalinovic's scheme and this district. First, shortly after Bezmalinovic deposited the checks representing the proceeds of the loan into his checking account at Chemical Bank in the Eastern District of New York, that branch sent the checks to Chemical's processing center in Manhattan. There, each check was credited to Bezmalinovic's account, subject to collection, and was forwarded to the New York Clearing House in Manhattan. Second, the checks were sent by the New York Clearing House to MHT's processing center in Manhattan. It was there that they were "collected," that is, debited from the MHT mortgage closing account. Third, both MHT and Chemical have their headquarters in Manhattan. ...Both the government and the defendant agree that the appropriate test to apply in determining whether venue is constitutionally permissible in this district is the "substantial contacts" test set forth by the Second Circuit in United States v. Reed, 773 F.2d 477 (2d Cir. 1985). The ultimate question of whether venue is proper in any particular case depends on the nature of the crime charged and the location of the acts that constitute the crime. In Reed, the court addressed the proper approach to considering that ultimate question. It stated that 'there is no single defined policy or mechanical test to determine constitutional venue.' Id. at 481. Instead, it held that the inquiry is 'best described as a substantial contacts rule that takes into account a number of factors -- the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding ....' Id. In this case it is undisputed that the site of defendant's acts was the Eastern District of New York. The only acts alleged to have occurred in the Southern District of New York are the ministerial actions taken by MHT and Chemical Bank in the process of crediting defendant's account. It is not alleged that those acts were intended or foreseen by defendant. Thus, the first Reed factor does not support

venue in this district. But the government urges that the other Reed factors, particularly the elements and nature of the crime and the locus of the effect of defendant's criminal conduct, support venue in the Southern District of New York. ...Defendant correctly notes that 18 U.S.C. § 1344 is violated whenever a person devises and executes or attempts to execute a scheme to defraud a financial institution, regardless of whether that person ever obtains money or property from the financial institution. See, e.g., United States v. Stavroulakis, 952 F.2d 686. 694 (2d Cir. 1992), cert. denied, 504 U.S. 926, 118 L. Ed. 2d 580, 112 S. Ct. 1982 (1992). Therefore, the crime charged in Count Four of the indictment was complete before any acts occurred in the Southern District of New York. But the fact that a crime was complete at one point in time does not necessarily mean that the crime did not continue thereafter. See United States v. Candella, 487 F.2d 1223. 1227-28 (2d Cir. 1973), cert. denied, 415 U.S. 977. 39 L. Ed. 2d 872, 94 S. Ct. 1563 (1974). The government argues that the successful execution of defendant's scheme was inextricably bound to the Southern District of New York because the actual obtaining of MHT's funds occurred at Chemical's check processing center in Manhattan and was rendered final at MHT's check processing center in Manhattan. The government emphasizes that without MHT's and Chemical's acts in the Southern District of New York, Bezmalinovic would not have obtained any money and therefore would not have attained the goal of his fraudulent scheme. The government is correct that the acts taken in the Southern District of New York were necessary in a 'but-for' sense to the ultimate success of defendant's scheme. Although the check from MHT was given to defendant in the Eastern District and deposited by Bezmalinovic in the Eastern District, the funds were not cleared until certain ministerial acts occurred in the Southern District. But defendant did not intend those acts to take place in the Southern District, nor could he have foreseen that the acts would occur there. The crediting and debiting that occurred in Manhattan were purely ministerial acts that did not involve any decision-making; the decision to grant defendant a mortgage had already been made by MHT in the Eastern District. ...No case cited by the parties addresses the precise issue of whether a bank's ministerial acts of debiting and crediting accounts can themselves be sufficient to support venue. The government instead points to cases it argues are analogous. The cases cited by the government are all distinguishable, however, either because the final decision by the entity that was the object of the fraud was made in the district in which venue was held to be proper, or because the acts which occurred in that district were either intended by the defendant or foreseeable to him. ...The government argues, however, that foreseeability is not necessary for proper venue. In support of that position, the government points to United States v. Ramirez-Amaya, 812 F.2d 813 (2d Cir. 1987). In that case, the defendant was convicted in the Southern District of New York of importing cocaine into the United States. The defendant and his coconspirators had agreed to ship cocaine from Colombia to Westchester County Airport, which is in the Southern District of New York. However, the FBI agents who were investigating the scheme caused the cocaine to be transferred to an FBI plane in Florida and then flown to LaGuardia Airport, which is in the Eastern District of New York. The defendant argued on appeal that venue in the Southern District was improper because the cocaine was flown to the Eastern District. The court first held, citing § 3237, that 'as to a charge of importation, venue may properly be laid 'in any district from, through, or into which ...such imported object . . . moves.' Id., at 816. It then stated that evidence that 'the course of the flight carried the airplane over the Narrows, a body of water that lies within the joint jurisdiction of the Southern and Eastern Districts of New York . . . was sufficient to make venue in the Southern District proper.' Id. The government argues that these facts are analogous to those in the present case, because the flight path of the plane in Ramirez-Amaya was beyond the knowledge or control of the defendant. The analogy is unpersuasive, however, because Ramirez-Amaya involved transportation in foreign commerce, for which § 3237 specifically provides that venue is proper in any district through which such commerce moves. But the government's argument is unpersuasive for a second reason as well. The reasoning behind the Ramirez-Amaya court's decision actually emphasizes the importance of foreseeability or control by the defendant over acts in the district in which he is tried. After holding that venue was proper in the Southern District, the Second Circuit stated:

While we would be loath to uphold venue on the basis of the flight path of an aircraft manned solely by government agents if there were an indication that its route had been significantly out of the ordinary, considering its point of departure and its destination, there is no such indication here. Rather, the proof was that the plane followed a normal route to LaGuardia airport. And though we recognize that LaGuardia was not the destination intended by the coconspirators, they can hardly complain on this basis, for the airport to which they directed the cocaine, Westchester County Airport, is within the Southern District of New York.

Id. This explanation demonstrates that the Second Circuit considered foreseeability and intent of the defendants to be important factors in the determination of whether venue was constitutionally permissible. Indeed, the Second Circuit stated that it would be 'loath to uphold venue' solely on the basis of an insignificant contact with this district that was not intended by the defendants or foreseeable to them. The government argues that MHT's and Chemical's acts in Manhattan were part of those institutions' 'normal route' for transferring money, just as the airplane's 'normal route' took it over the Narrows. Even if true, that is irrelevant. The 'normal route' of an airplane between two locations is important because a defendant can foresee that the plane will pass over districts along that route. There is no similar foreseeability in the present case. None of the cases discussed above is directly on point. The cases provide some guidance, but do not resolve the issue of whether venue is proper in the Southern District of New York in this case. Each case cited by the government is distinguishable on its facts. The fact that each case can be distinguished is a reflection of the fact that the determination of whether venue is constitutionally permissible in a given case necessarily requires an examination of both the specific facts of that case and the nature of the particular crime charged. As the Second Circuit has stated, 'there is no single defined policy or mechanical test to determine constitutional venue.' United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985). Thus, while foreseeability by the defendant was seen as important by the Tannenbaum and Ramirez-Amaya courts, it was not seen as necessary in the false statement cases. In those cases, the fact that the target of the fraudulent scheme made its final decision relating to the fraud in a particular district was held to be a close enough connection to the crime charged for venue to be proper in that district. In this case, the connection to the Southern District of New York is much more tenuous than in any of the cases discussed above. Defendant did not intend and could not have foreseen that any acts would occur in the Southern District, and no decisions were made by the target of the fraud in the Southern District. The only acts that occurred in this district were ministerial in nature. The ultimate question for this court to decide is whether the crime charged has 'substantial contacts' to the Southern District of New York within the meaning of Reed. Only if sufficient contacts exist is venue constitutionally permissible. In this case, the requisite substantial contacts do not exist. "

United States v. Rodgers, 575 F. Supp. 246, 247 (E.D.111. 1983).
"Counts V through IX charge Rodgers with use of a communication facility in the Northern District of Illinois at various dates; Rodgers is the sole defendant named in these counts. Counts V through IX are based upon recorded telephone calls placed by an undercover agent working for the Drug Enforcement Agency from Chicago to Rodgers in the Bahamas.
   ...At issue is whether Rodgers 'used' a communications facility in violation of § 843 when he received telephone calls in the Bahamas from a government agent. Rodgers' use of a communications facility did not occur within the United States. As a result, we think that venue over Rodgers with respect to Counts V through IX is improper. We doubt that Congress intended § 843(b) to reach the situation at bar, which involves only the receipt of a telephone call in a foreign country. It is inconceivable that Congress intended under § 843(b) that a DEA agent may create federal offenses all over the world by simply picking up a telephone in the United States and calling suspected narcotics violators outside the country. The Federal Rules of Criminal Procedure provide that 'prosecutions shall be had in a district in which the offense was committed.' Fed.R.Crim.P. 18. We do not believe that Rodgers committed any violations of 21 U.S.C. § 843(b) in this district. In its opposition to defendant's motion, the United States cites United States v. Lawson, 507 F.2d 433 (7th Cir. 1974), cert. denied, 420 U.S. 1004, 95 S. Ct. 1446, 43 L. Eel. 2d 762 (1975), in which the Seventh

Circuit held that a court has ju risdiction over a defenda n t charged with conspiracy despite his or her absence from the United States during the conspiracy. Id. at 445. The Court also observed tha t according to 18 U.S.C. § 3237, ven ue is proper in the district where a conspiracy is formed or where any overt act furtheri ng the conspiracy was commi tted. Id. Bu t Cou nts V through IX do not charge Rodgers wi th conspi racy. Ra ther, they charge him with use of a telephone in facilitating a conspiracy to possess and distribu te cocai ne. Lawson is th us i napposite to the present matter.  (Em phasis suppl ied.)"

Respectfully  submi tted,

By his Attorneys

Geoffrey G. Nathan Esq

132 Boylston ST 5th FL

Boston MA 02116

(617) 472-5775

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mailing/hand.

Date: 6/18/14                                    ECF