UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Dkt. No. 0101 1:13CR10275-1 – PBS |
| ) | |
| DAMIEN HESS ) | |

## DEFENDANT DAMIEN HESS'S SENTENCING MEMORANDUM IN SUPPORT OF SENTENCE RECOMMENDED IN PLEA AGREEMENT

Pursuant to FRCrP 32 and the Court's Procedural Order of November 14, 2014, defendant Damien Hess, through counsel, files this **Sentencing Memorandum** in support of the Court's imposition of a sentence consistent with the terms of the plea agreement entered into by the parties in this matter.

### Summary

On November 14, 2014, the defendant pleaded guilty to an Indictment which charged him with one count of Conspiracy, in violation of 18 U.S.C. § 371, and seven counts of Wire Fraud, in violation of 18 U.S.C. § 1343. The plea agreement, tendered under FRCrP 11(c)(1)(B), calls for the government to recommend a sentence at the low end of the advisory guideline range (AGR), a fine within the guideline fine range if able to pay, 36 months' supervised release, a mandatory special assessment of $800, restitution of at least $2,881,925, and forfeiture as agreed upon. The probation officer subsequently completed the court-ordered Presentence Investigation Report (PSR) which recommended that the AGR, based upon a total offense level of 24 and a criminal history category of I, was 51 to 63 months.[1] The defendant does not dispute this computation. For reasons to be detailed in this memorandum, the defendant urges the Court to impose the sentence recommended by the government in the plea agreement, *i.e.*, 51 months' imprisonment, 36 months' supervised release, waiver of fine due to the defendant's inability to pay same, restitution of $2,881,925, a special assessment of $800, and forfeiture as agreed to. The defendant also respectfully requests that the Court permit the defendant to self-surrender to the institution designated by the U.S. Bureau of Prisons.

---

[1] PSR, ¶ 81.

## Nature and Circumstances of the Offense

The defendant acknowledges that the white collar offense before the Court is indeed serious. The government alleges Hess knowingly misled investors and used the proceeds to invest in a personal business venture, which failed. Hess's company, Quest, bought insurance on said investments in this business through an errors and omissions insurance policy, but the insurance carrier refused to honor the loss claim. The result is that the investors lost all of the money they had invested with Quest. The defendant regrets his actions and the impact they have had on the investors.

It should be pointed out, in this connection, however, that the defendant has fully cooperated with investigators since this matter came to light. Moreover, he has complied fully with all court orders, including his Pretrial Services conditions. The defendant fully intends to make every effort to make restitution to all victims.

## History and Characteristics of the Defendant

The probation officer has done a creditable job in the PSR recounting the defendant's personal and family history and his characteristics. One thing that stands out is the fact that the defendant never knew his biological father and that he suffered physical abuse at the hands of his alcoholic stepfather, from whom the defendant's mother ultimately divorced after the defendant reached adulthood.[2] The defendant has also been diagnosed with Attention Deficit Hyperactivity Disorder,[3] a condition which theoretically could have played a role in the offense. One positive constant throughout his life has been his mother, Paula Ray, who has remained supportive of him and his family.

Currently, the defendant's situation is that he has been married for eleven years and has enjoyed a good relationship with his wife free of domestic abuse or separation. The defendant is also a devoted father to their three children, currently aged 10, 8, and 6. Their emotional and financial support during the defendant's imprisonment is unclear, although the defendant's mother may be able to assist in this area.[4] Certainly, the defendant's wife and children must be viewed as the unintended and collateral victims of the defendant's actions, the impact of which is likely to be significant well into their respective futures.

---

[2] PSR, ¶ 52.
[3] PSR, ¶ 62.
[4] PSR, ¶ 57.

### Offense Level Computation under the Guidelines

The defendant submits that the **Offense Level Computation**, found in ¶¶ 28 through 41 of the PSR, fully captures the defendant's specific offense conduct and the fact that he fully accepts responsibility for his conduct. The loss of $2,881,925, which is actually in the low end of the range for this specific offense characteristic of losses between $2,500,000 and $7,000,000, resulted in a substantial 18-level increase in the offense level. Moreover, the defendant's role in the offense as organizer and supervisor of coconspirators Lucas Ford and Joshua Estes is reflected in the two-level increase for this fact. In sum, the defendant believes that the offense level computation by the probation officer fully and fairly reflects his role and culpability in this offense.

### Criminal History Computation under the Guidelines

The defendant has been properly placed in Criminal History Category I and is, for all practical purposes, a first offender in this white collar offense. This is noteworthy, especially in light of a specific directive the Congress gave the U.S. Sentencing Commission when formulating the guidelines. That directive was: "The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or otherwise serious offense, . . . ."[5] The defendant acknowledges that this provision does not fully apply to him because the instant matter is a serious offense deserving of a sentence of imprisonment. Still, the directive reflects the general sense of the Congress that first offenders who have committed nonviolent offenses should be accorded some mitigating consideration by the Courts when considering an appropriate sentence.

### The Need for Sentence Proportionality with Codefendant Ford

As the Court is aware, the defendant's one codefendant, Lucas Ford, received a sentence of imprisonment of one year and one day. Ford certainly played a lesser role in the offense and, unlike the defendant, received a U.S.S.G. §5K1.1 consideration by the government. One of the factors the Court is to take into consideration at sentencing is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

---

[5] 28 U.S.C. § 994(j).

similar conduct."[6] Notwithstanding the fact that the defendant's requested sentence of 51 months' imprisonment would mark more than a fourfold increase over that of his codefendant, the defendant submits that it would be at the far but acceptable end of representing a proportional sentence, given all the circumstances of this case and the defendant's greater relative culpability. Anything beyond the 51 months, it is submitted, would call into question its true proportionality in this case.

### Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes

Before imposing sentence, the Court is obligated to address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). An analysis of this case in light of those purposes follows.

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The defendant does not contest the fact that the offense is serious and that respect for the law and just punishment required that a significant term of imprisonment be imposed. The defendant fully believes that the AGR calculated by the probation officer fully and fairly captures the defendant's culpability and his acceptance of responsibility for his actions. Moreover, a sentence at the low end of the AGR, *i.e.,* 51 months, would be supported by the mitigating considerations recounted in this memorandum, *i.e.,* the fact that the defendant cooperated with authorities and has complied with all court orders; the fact that the defendant is a first offender in this nonviolent offense; and, the fact that it would be proportional to the sentence of codefendant Ford.

*(B) To afford adequate deterrence to criminal conduct.*

A sentence of 51 months' imprisonment, it is submitted, would be a clear deterrent to others who might consider committing a similar crime. The defendant himself would be so deterred because of a desire to avoid separation in the future from his loved ones.

*(C) To protect the public from further crimes of the defendant.*

---

[6] 18 U.S.C. § 3553(a)(6).

The public will be well protected while the defendant is imprisoned and while he is on supervised release. Even after that, the public should be well protected because the defendant will not want to do anything that will jeopardize his relationship with his family.

*(D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

The defendant is not in need of any such training, care, or treatment. Counsel would otherwise assert that Hess, a former football player, gained an inordinate amount of weight during the pendency of this litigation. Attorney Nathan request that the client be ordered into a weight loss program while incarcerated. Attorney Nathan states to the court that his personal interactions with the client have been extremely amicable and pleasurable.

## Recommendation

The defendant fully believes that, for all of the reasons cited in this memorandum, a sentence of 51 months' imprisonment would be "sufficient, but not greater than necessary" to meet the four statutory purposes of sentencing cited and discussed above. The defendant therefore urges the Court to impose such a sentence of imprisonment, together with the following:

    A term of supervised release of three years with appropriate special conditions;
    Restitution of $2,881,925, joint and several with codefendant Ford;
    Waiver of a fine due to inability to pay same;
    Special assessment of $800.00;
    Forfeiture as agreed to; and,
    Self-surrender to the institution designated by the U.S. Bureau of Prisons.

Respectfully submitted,
Damien Hess
By his attorney,

/s/ Geoffrey G. Nathan
_____
Geoffrey G. Nathan
BB0 #552110
132 Boylston Street, 5th Floor
Boston, MA 02116
617-472-5775
Nathanlaw@earthlink.net

**Dated:**   February 20, 2015

cc:   Sara M. Bloom, AUSA
      Jennifer D. Broquist, USPO

6

