UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| V. | ) | CR. NO. 13-10275-PBS |
| | ) | |
| | ) | |
| DAMIEN HESS | ) | |

**UNITED STATES' SENTENCING MEMORANDUM AS TO DAMIEN HESS**

The United States submits this memorandum in support of its recommended sentence for Damien Hess ("Hess") of the low end of the guideline range of 51 to 63 months, followed by three years of supervised release, restitution and forfeiture of at least $2,881,925, including the assets identified in the plea agreement; and an $800 special assessment. The United States submits that the guideline range is justified by the facts of this case. A term of incarceration at the low end of the guidelines range of 53-61 months is appropriate here both based upon the guidelines calculation and the totality of the facts of this case, including the impact of Hess's scheme on the victims.

**I.  CALCULATION OF THE GUIDELINES RANGE**

The parties agree that Defendant's total offense level under the USSG (prior to any adjustment for acceptance of responsibility) is calculated as follows:

- in accordance with USSG §2B1.1(a), Defendant's base offense level is 7, because an offense of conviction has a statutory maximum term of imprisonment of 20 years or more;

- in accordance with USSG §2B1.1(b)(J), Defendant's offense level is increased by 18, because the loss resulting from the offenses to which he is pleading guilty was greater than $2.5 million and less than $7 million; and

1

- in accordance with USSG §3B1.1(c), Defendant's offense level is increased by 2, because Defendant was an organizer, leader, manager and supervisor in the criminal activity.

## II.   UNITED STATES' SENTENCING RECOMMENDATION

As set forth in the plea agreement, the U.S. Attorney recommends the following sentence: incarceration at the low end of the guidelines sentencing range of 51 to 63 months, 36 months of supervised release; a mandatory special assessment of $800; restitution of at least $2,881,925; and forfeiture of $2,881,925, including but not limited to the following assets:

a. One carbon black 2010 Buick Enclave four door 4WD Utility, bearing California registration number 6MND710 and vehicle identification number 5GALVCED1AJ212575;

b. One black 2009 H2 Hummer four door 4X4, bearing California registration number 6KXK234 and vehicle identification number 5GRGN83239H100294;

c. One black 2010 Cadillac Escalade four door 4X4 Platinum, bearing California registration number 6LRS176 and vehicle identification number 1GYUKDEF7AR202874; and

d. One black 2010 Chevrolet Camaro two door, bearing California registration number 6TVN133 and vehicle identification number 2G1FT1EWXA9187106;

e. $969.25 in United States currency seized from Wells Fargo Bank from account number ending in 4130; and

f. $21,111.93 in United States currency seized from Wells Fargo Bank from account number ending in 9149.

## III.   SUMMARY OF THE FACTS

In about 2008 or earlier, Damien Hess began a business known as Quest Capital Finance, with an office in Aliso Viejo, California. Hess operated the business primarily by himself for the first couple of years and then hired Lucas Ford ("Ford") to assist him in the business, first as a loan officer and ultimately as its Chief Operating Officer. Later on, Hess also hired another

salesperson to assist in finding and signing up "customers."  Hess always remained the President, CEO and leader of the business.  He controlled all bank accounts and he, himself, received all funds provided by potential borrowers, as detailed below.  Hess retained all or most of the money stolen from the victims of the scheme described below.  He paid Ford a total of about $108,000 in salary and bonuses over a two year span, and paid the additional salesperson about $32,000.

Hess, and those acting at his direction, including Ford, falsely represented to potential clients that Quest was a financing company that could provide hundreds of millions of dollars of loans for businesses.  Victims were told that Hess was a member of the Hess oil family and Hess provided a picture of someone Hess claimed to be his relative with President Eisenhower.  Hess also claimed that he had hundreds of millions of dollars of personal wealth available to provide financing to businesses.

In around 2011, Hess began soliciting the victims listed in the indictment to place hundreds of thousands of dollars into purported escrow accounts, this time with the assistance of Ford and another sales person.  Hess often tried to avoid dealing directly with the victims and instead directed Ford and the other Quest salesperson regarding (1) what to say to attract clients and (2) how to prepare and implement the transactions.  Hess instructed Ford and the salesperson on the pitch, received and approved most of the transaction documents and signed some of the transaction documents.  Hess also had communications directly with many of the victims.

Hess, Ford and others working at Hess' direction, represented to prospective borrowers that Quest could lend millions of dollars and had those funds available to lend.  However, Hess, Ford and others explained to potential clients that they first needed to pay several hundred thousand dollars into a refundable escrow account, that is, into an account where the funds would be held by a third party until all contingencies for the loans were resolved.  On repeated

occasions, Hess and others acting at his direction represented that Quest had the capital to be able to make such loans and only needed the clients' deposits to obtain back-up or default protection for the loans that Quest had agreed to make. Hess caused others to send to potential borrowers a letter from Quest's attorney. That letter, a version of which was sent multiple times, represented that Quest had backers who had an asset base of more than $5 billion dollars.

In each deal, Hess promptly took the supposedly-escrowed funds, but never provided the promised financing. The escrow agreements pursuant to which these borrowers made the deposits explicitly and falsely represented that the funds would not be moved out of escrow unless and until (1) all contingencies for the loan had been met and (2) the loan was being funded.

As a result of the scheme, and in reliance upon the fraudulent representations, at least the following funds were wired to the escrow agent designated by Quest Capital Finance and then removed at Hess's direction:

| Borrower Abbreviation | Amount Sent To Escrow | Date Funds Sent To Escrow | Date Funds Removed From Escrow | Amount Removed From Escrow |
|---|---|---|---|---|
| HH | $875,000 | 2/16/2011 | 2/18/2011 | $870,625 |
| BB | $100,000 | 4/8/2011 | 4/12/2011 | $99,000 |
| SS | $480,000 | 4/7-4/8/2011 | 4/19/2011 | $477,600 |
| CC | $400,000 | 6/27/2011 | 7/8/2011 | $400,000 |
| AA | $760,000 | 6/29/2011 | 7/12/2011 | $756,150 |
| PP | $280,000 | 9/6/2011 | 9/27/2011 | $278,550 |

In order to lull prospective borrowers and prevent them from detecting the fraud, Hess, Ford and another working on behalf of Quest, continued to promise the prospective borrowers that Quest would soon be providing millions of dollars of financing. When the time came for the

financing to be released to the borrowers, Hess made up a series of excuses to tell the prospective borrowers, including claims that a typo caused the letter of credit not to go through and a story about a European banking holiday causing certain financing to be held up.  In no instances did Hess or Quest ever provide financing.

## CONCLUSION

The United States expects that several of the victims will want to be heard, either in person, or by written statement.  Overall, Hess's conduct here is appropriately captured by the guidelines and justified the recommended sentence.

                                      Respectfully submitted,

                                      CARMEN M. ORTIZ
                                      United States Attorney

                    By:   /s/ Sara Miron Bloom
                          SARA MIRON BLOOM
                          PATRICK CALLAHAN
                          Assistant U.S. Attorneys

Date:  February 20, 2015

## Certificate of Service

I hereby certify that, on February 20, 2015, this pleading was served on counsel for defendant by electronic filing.

                                      /s/ Sara Miron Bloom
                                      SARA MIRON BLOOM